# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

COINS 'N THINGS, INC.,

     Plaintiff/Defendant-in-Counterclaim,

v.

UNITED STATES POSTAL SERVICE,

     Defendant/Plaintiff-in-Counterclaim.

Civil Action No. 18-10257-RWZ

## UNITED STATES POSTAL SERVICE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND III OF THE PLAINTIFF'S COMPLAINT

## I.    INTRODUCTION

On February 8, 2018, Plaintiff, Coins 'N Things ("CNT"), filed a Complaint "in the nature of an appeal of a deficiency assessment" by the Defendant, United States Postal Service (the "Postal Service").  Doc. 1 ("Compl.").  In addition to an administrative appeal (Compl. at Count II), CNT makes equitable claims against the Postal Service, alleging equitable estoppel (Compl. at Count I) and claiming unjust enrichment (Compl. at Count III).  On June 13, 2018, this Court held a status conference, and after hearing brief argument regarding CNT's equitable claims against the Postal Service, this Court ordered the parties to brief the viability of CNT's equitable claims as a matter of law.  Doc. 19.

In seeking equitable relief against the Postal Service, CNT asks this Court to act without subject matter jurisdiction, and contrary to governing law in reviewing the Postal Service's decision to assess a revenue deficiency against CNT on equitable grounds.  "[N]on-statutory review" of Postal Service decisions "is available only to determine whether the agency has acted 'ultra vires'—that is, whether it has 'exceeded its statutory authority.'"  *Mittleman v. Postal Regulatory Commission*, 757 F.3d 300, 307 (D.C. Cir. 2014).  Although this Court may review a

final agency decision of the Postal Service, this Court cannot make factual findings or substitute its judgment for that of the Postal Service, nor can it grant CNT the equitable relief it seeks.

Not only does this Court lack subject matter jurisdiction to consider CNT's equitable claims, CNT's Complaint provides no basis for this Court to conclude that the Postal Service's Pricing Classification Service Center ("PCSC") exceeded its authority, or acted *ultra vires*, in resolving the underlying mail postage deficiency against CNT, especially when it applied clear published regulations in doing so.

Accordingly, for the reasons that follow, this Court must dismiss Counts I and III of CNT's Complaint.

## II.    FACTUAL BACKGROUND AND FINAL AGENCY DECISION

### A.    Final Agency Decision

In December of 2008, the Postal Inspection Service commenced an investigation of a potential revenue deficiency involving CNT's registered mailing practices. *See* Doc. 24, Administrative Record ("AR") at 22. As part of the investigation, the Postal Inspection Service issued a subpoena to CNT, dated March 6, 2009, requiring CNT:

> For the period, December 1, 2007 through the present, please provide all business records relating to the actual value of items mailed via Registered Mail on behalf of Coins N' Things, or by Coins N' Things on behalf of third parties, including but not limited to:
>
> 1. Records of mailings, mailing transaction logs, packaging slips, Registered Numbers and Article Numbers.
> 2. Customer account records, customer billing records, purchase orders, billing statements, product inventory records that relate to, or are associated with, any and all registered mailings made through the US Postal Service.

AR at 34-35; *see also* Compl. ¶ 28 (similar); *compare* Doc. 17 ("Countercl.") ¶29 with Doc. 20 ("Pl. Ans.") ¶29 (admitting). CNT produced records pursuant to the subpoena (Compl. ¶ 30) to the Postal Inspection Service in five installments covering the following specified periods: (1) December 1, 2007 through February 29, 2008; (2) March 1, 2008, through May 31, 2008; (3) June 1, 2008 through August 31, 2008; (4) September 1, 2008 through November 30, 2008; and (5) December 1, 2008 through March 6, 2009. AR at 59-65. For each installment of records produced, CNT provided a certification of compliance with the subpoena for the stated timeframe. *Id.*; *compare* Countercl. ¶ 30 with Pl.'s Ans. ¶ 30. Except for the first production installment above, each certification noted that the attached records did not include "United States Postal Service records (firm books and manifests)." *Id.*

On November 13, 2014, citing to the Domestic Mail Manual,[1] and the Postal Inspection Service investigation, the Postal Service's Revenue and Compliance Office issued a revenue deficiency notice to CNT in which it demanded $225,826.20 for Registered Mail parcels CNT shipped from December 1, 2007, to February 28, 2009, as a result of CNT's failure to comply with Postal regulations. AR at 20-21A. In assessing the deficiency, the Postal Service explained, *inter alia*:

> During the course of a security review in October 2008, the United States Postal Inspection Service (USPIS) became aware that Coins N' Things (CNT) was not declaring the actual value as required on the Registered Mail logs.
>
> ***

---

[1] The Domestic Mail Manual ("DMM") is a Postal Service regulation established under its authority in 39 U.S.C. § 401(2), which sets forth the Postal Service's mailing standards (the "regulations"). *See* 39 C.F.R. §§ 111.1, 211.2(a)(2). The regulations specify that the value to be declared for precious metals sent with Registered Mail services is the market value or cost. DMM 503.2.3.1.

> Coins N' Things failed to follow the guidelines outlined in the Domestic Mail Manual.
>
> On December 3, 2008 US Postal Inspector Joseph Gugliotta observed the processing of CNT's Registered Mail along with reviewing historical firm books and manifests submitted by CNT where it revealed that in November 2008 CNT was registering pieces with substantial declared values (i.e. $22,500, $30,000, $45,000) for a period of time in November and then reverted to declaring values at either $100 or $1,000.
>
> On December 8, 2008 Inspector Gugliotta returned to the Bridgewater Post Office to interview Officer-In-Charge Michelle Morris and recover additional firm books and manifest. During the course of the interview Mrs. Morris stated that a Mr. Al Brown, shipping department manager, had been contacted and informed of the requirement to declare the actual value…
>
> Revenue loss to the USPS occurred between December 1, 2007 and February 28, 2009 and were [sic] a direct result of CNT under claiming actual value of its parcels. Since CNT was unable to provide documentation disclosing how much actual value was individually shipped in any of their Registered Mail parcels, an average was used to calculate loss.

*Id.* CNT timely appealed the deficiency, by letter dated January 10, 2014, to the PCSC.[2] AR at 40-51.

In its appeal, CNT made three primary arguments. First, CNT argued that because Postal Service employees told CNT that the "value to be declared for Registered Mail was limited to the insurance coverage customers sought from the Service," CNT "reasonably relied upon the representations," and therefore the Postal Service was estopped from collecting the revenue deficiency assessment. AR at 40-44. Next, CNT argued that enforcement of deficiency

---

[2] The PCSC is the agency's final decision-maker for revenue deficiencies. Its role in adjudicating revenue deficiencies is to determine whether a deficiency exists and whether the amount of the deficiency was calculated correctly; the PCSC may not, however, grant exceptions to the regulations. DMM § 607.1.3.

assessment would result in unjust enrichment to the Postal Service and would violate the requirement that fees be fair and reasonable in accordance with 39 U.S.C. § 403. AR at 44-45. Third, CNT argued in its appeal that the "deficiency assessment calculation is lacking in reasoned decision making…." *Id.* at 000046.

Ultimately, the PCSC denied CNT's appeal in a written final agency decision dated July 27, 2015. AR at 12-14. The final agency decision noted the PCSC's consideration of CNT's arguments, and the documents submitted as part of its appeal. One of those documents included e-mail correspondence dated April 20, 2009, between the Postal Service's Help Desk, and Ms. Carol Tyler, who identified herself as CNT's insurance agent. AR at 48-49. In the e-mail, Ms. Tyler stated that CNT's insurance underwriters did not allow their clients, including CNT, to declare the full value of their shipped parcels because they were shipping precious metals and jewelry, and seeking the specific federal law that made the requirement to declare full value enforceable. *Id.* In response, the Postal Service Help Desk incorrectly informed Ms. Tyler that "mailers are not required by law to list the actual value of the item when shipping domestically with Registered Mail." *Id.* at 12-14. In issuing its final agency decision, the PCSC properly informed CNT that "[a] mailer must comply with all applicable postal standards. Despite any statement in this document or by any USPS employee, the burden rest with the mailer to comply with the laws and standards governing the domestic mail." *Id.* at 13. The PCSC explained that its decision was limited solely to consideration of the assessment, i.e., whether the mail classification decision underlying the deficiency and calculation of the amount by which postage had been underpaid was correct, and concluded that the decision underlying the deficiency and calculation of the amount by which CNT underpaid postage was correct. *Id.* at 14.

B.     CNT's 2015 Complaint And Recission Of Deficiency Assessment

After its appeal was denied, CNT filed a complaint in this Court on September 22, 2015. (1:15-cv-13377).  On October 15, 2015, the Postal Service rescinded the deficiency assessment while reserving its "right to reissue a decision."  AR at 11.  On October 30, 2015, CNT voluntary dismissed its complaint without prejudice.

C.     The Postal Service Conducts A Further Review And Reissues Its Decision

On April 3, 2017, the Postal Service provided CNT with the 2013 revenue deficiency assessment letter, its investigative memorandum and exhibits, CNT's registered mail manifests, and CNT's invoices used to calculate the deficiency assessment.  AR at 9.  At that time, the PCSC also requested further information from CNT, and requested that CNT provide the information within sixty (60) days.  *Id*.  The Postal Service informed CNT that its response would be added to the administrative record in the case, would be considered before a final agency decision was reached, and in the absence of receiving additional documentation, the PCSC would issue a deficiency with the record it had before it, and the decision issues on July 27, 2015 would stand as the final agency decision.  *Id*.

Despite granting CNT several extensions of time by which to produce additional documentation, CNT did not submit further documentation or information as requested by the Postal Service.  AR at 1.  As a result, on November 9, 2017, the PCSC issued a letter stating that the July 27, 2015 decision would "stand as the final agency decision."  *Id.* at 1-14.  CNT's Complaint in this Court followed.  *See* Compl., *generally*.

D.     CNT Files The Instant Complaint

After receiving the final agency decision, CNT filed the instant Complaint asking this Court to reverse and enjoin enforcement of the Postal Service's final agency decision based on

6

similar arguments it made in its appeal before the PCSC: (1) equitable estoppel, based upon CNT's alleged "reasonable reliance" upon Postal Service employee statements in undervaluing its declared values for Registered Mail services (Compl. ¶¶ 36-44); (2) that the Postal Service failed to give reasoned consideration to the material facts and issues raised by CNT in its appeal (Compl. ¶¶ 45-51); and (3) that CNT's payment of the deficiency assessment to the Postal Service would result in unjust enrichment, because the additional payment does not approximate or correlate with the services that were already rendered to CNT (Compl. ¶¶ 52-59).

The Postal Service filed an Answer and Counterclaim (Doc. 17) seeking (1) judgment on its claim for debt pursuant to the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001 *et seq.* (Count I), unjust enrichment (Count II), and declaratory relief (Count III) to include a declaration that CNT owes the Postal Service for its failure to pay $225,826 that it was legally obligated to pay for postal services, with post-judgment interest and any further relief this Court deems proper.

## III.  ARGUMENT

### A.  This Court Lacks Subject Matter Jurisdiction To Consider CNT's Equitable Claims

"As an entity of the United States government, the [Postal Service] may not be sued except to the extent that Congress has expressly waived the United States's sovereign immunity from suit." *Lane v. Peña*, 518 U.S. 187, 192 (1996). The Postal Reorganization Act ("PRA"), 39 U.S.C. § 101 *et seq.*, generally "waives immunity of the Postal Service from suit giving it the power 'to sue and be sued in its official name.'" *Postal Service v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 741 (2004). But, "[w]hile Congress waived the immunity of the Postal Service, Congress did not strip it of its governmental status. The distinction is important. An absence of immunity does not result in liability if the substantive law in question is not intended to reach the federal entity." *Id.* at 743–44. This two-step analysis was first articulated by the Supreme Court in *FDIC v. Meyer*,

510 U.S. 471, 484 (1994): "If there has been such a waiver, as in this case, the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief." *Id.* CNT's claims fail at the second step.

CNT does not articulate a legal source of *substantive* law for the relief it seeks in Counts I and III of the Complaint; instead, its claims are equitable. To begin, CNT cannot challenge the PCSC's decision under the Administrative Procedures Act ("APA"). That the Postal Service's exercise of power is exempt from judicial review under the APA is a well-settled principle of law in various circuits. *Mittleman v. Postal Regulatory Com'n*, 757 F.3d 300, 305 (D.C. Cir. 2014) ("[a]s a consequence, we have observed that 'the Postal Service is exempt from review under the Administrative Procedure Act.'"); *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 858 (D.C. Cir. 2012); *Carlin v. McKean*, 823 F.2d 620, 622–23 (D.C.Cir.1987); *Nat'l Easter Seal Soc'y for Crippled Children & Adults v. U.S. Postal Serv.*, 656 F.2d 754, 766–67 (D.C.Cir.1981); *Currier v. Potter*, 379 F.3d 716, 725 (9th Cir.2004); *Booher v. U.S. Postal Serv.*, 843 F.2d 943, 945 (6th Cir.1988); *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1155 (4th Cir.1988).

"[N]on-statutory review" of Postal Service decisions "is available only to determine whether the agency has acted 'ultra vires'—that is, whether it has 'exceeded its statutory authority.'" *Mittleman v. Postal Regulatory Commission*, 757 F.3d 300, 307 (D.C. Cir. 2014).[3] CNT's Complaint provides no basis to conclude that PCSC exceeded its authority in resolving the underlying revenue deficiency. Instead, the opposite is true: by CNT's own allegations, the PCSC

---

[3] In the D.C. Circuit, prior cases permitting non-statutory review do not survive *Mittleman*, as subsequently explained in *Sears, Roebuck & Co. v. U.S. Postal Serv.*, 844 F.3d 260, 265 (D.C. Cir. 2016). The Court in *Sears* permitted "reasoned decisionmaking review" in that case only because the Postal Service raised the argument that it was exempt from APA review at the trial level, and the D.C. Circuit ruled the defense had been waived. *Id.* The Postal Service is not waiving that defense here.

simply applied the clear, published mail regulations applicable to Registered Mail services to CNT, resulting in a revenue deficiency for which CNT is required to pay, and now challenges. Such an action cannot be held to be *ultra vires*. And, absent an *ultra vires* action, this Court lacks jurisdiction to consider CNT's claims.

The reality is that CNT declared a false, lower value than the actual value of its Registered Mail parcels, and therefore paid less in postage for Registered Mail services than it should have. CNT attempts to justify its conduct by claiming it did so based upon the amount of indemnity insurance it elected to purchase, and that it did so with the Postal Service's consent. This argument is a red herring. During the relevant time period, the Postal Service's Registered Mail rates did not offer a rate that allowed mailers an option to purchase insurance.[4] Even if such an option existed, however, pursuant to Postal Service regulations, CNT was nonetheless required to declare the full value of the parcels it was shipping. "Regardless of any insurance that may cover the article, the mailer must always declare its full value to the USPS when presenting it for registration and mailing." DMM 503.2.3.1. The declared value is the sole basis for,[5] and is directly correlated with, the Registered Mail postage fee owed by a postal customer. *Id.* at 503.2.1; *see also* Exhibit

---

[4] Prior to June 8, 1997, mailers had the option to purchase Registered Mail services with or without insurance. PRC Op., Docket No. MC96-3, at 129-30 (April 2, 1997) found at https://www.prc.gov/dockets/doclist/MC96-3/Opinion-and-Recommended-Decision/. The no-insurance option was completely eliminated from Registered Mail services on January 10, 1999. PRC Op, Docket No. R97-1, at 570-71 (May 11, 1998) found at https://www.prc.gov/prcarchive/viewpdf.aspx?docid=26814; https://www.prc.gov/prcarchive/viewpdf.aspx?docid=26815.

[5] Except for items with a declared value of $15,000,000 or more, not at issue here, the sole basis for the rate is the declared value. *See* Exhibit A, *infra*.

A (relevant DMM provisions). [6] CNT's argument that it should be allowed to declare a value that is contrary to the regulations, and the Postal Service's refusal to allow CNT to do so, plainly manifests that in issuing the revenue deficiency to CNT, the Postal Service was acting to enforce its regulations, which is clearly within the scope of the Postal Service's authority. *See* 39 U.S.C. §§ 404, 2402 (setting forth the USPS's authority to prescribe, in accordance with law, the amount of postage to be paid, and its authority to collect debts due to it, respectively).

Indeed, if allowed, CNT's request for special treatment would undermine the uniform, national system of rates envisioned by Congress and regulated by the Postal Regulatory Commission.[7] The Court should recognize this suit for what it is: an attempt by a volume mailer to avoid paying the substantial postage that it owes because it failed to follow the regulations. CNT's claim that Postal Service employees were aware of its conduct and allegedly "acquiesced" does not excuse it from the consequences of repeatedly underpaying postage by understating the values of their parcels. Put simply, CNT must now pay the amount of postage it should have paid to begin.

---

[6] See attached relevant excerpts from the DMM published July 17, 2007 and May 12, 2008, along with the Registered Mail fee schedule published in the DMM. In its Counterclaim, the Postal Service inadvertently stated that postal rates changed four times during the operative period. Counterclm. at ¶ 35. In fact, only two published rates apply to the operative period, they were published in the DMM, and are contained in Exhibit A. Only the published and applicable rates were used to calculate the deficiency.

[7] Since the Postal Accountability and Enhancement Act's enactment in 2006, the Postal Regulatory Commission's final approval of rates decisions may only be reviewed in the United States Court of Appeals for the District of Columbia if proceedings are instituted within 30 days of a final decision of the Postal Regulatory Commission. 39 U.S.C. § 3663.

The Postal Service does not contest the Court's authority to review the final agency decision, so long as review is limited to a determination of whether the Postal Service, through the PCSC, acted outside the scope of its authority, and the review is limited to the administrative record that was before the PCSC. As to CNT's equitable claims, however, "[u]nless the plaintiffs can direct us to a statute or regulation creating the right they seek to enforce, we have no jurisdiction over the subject matter of their dispute with the Postal Service." *Tedesco v. U.S. Postal Serv.*, 553 F. Supp. 1387, 1988 (W.D. Pa. 1983)(holding that the district court lacked jurisdiction to consider plaintiffs' service complaint because the Postal Regulatory Act did not create an implied private right of action).

CNT cannot do so, and this Court lacks subject matter jurisdiction to consider its claims.

**B.    The Postal Service Did Not Act *Ultra Vires* In Uniformly Applying Its Regulations**

CNT does not refer to, much less dispute, the language of the mail regulations, nor can it. At all relevant times, mailers requesting Registered Mail services were required by law to declare the "full value" of articles that were presented for Registered Mail services. "Regardless of any insurance that may cover the article, the mailer must always declare its full value to the USPS when presenting [packages] for registration and mailing."  DMM 503.2.3.1.  Contrary to CNT's claim, private insurance carried on registered mail does not modify the requirements for declaring the full value. *Id.*  The value to be declared for precious metals sent with Registered Mail services is the market value or cost.  *Id.* [8]  The declared value is the sole basis for, and is directly correlated

---

[8] The requirement to declare "full value" is a long standing requirement, published in a Notice of Proposed Rule Making, 26 FR 6029-6031 (July 5, 1961) and that went into effect on August 15, 1961.  Indeed, the explanation of the value to be declared for precious metals has remained exactly the same for over 55 years.  *See id.*

with, the Registered Mail fee owed by a postal customer. *Id.* at 503.2.1; *see also* Ex. A. As the declared value of the parcel increases, so too does the Registered Mail fee. *Id.*

During the relevant time period, from December 1, 2007, through February 28, 2009, CNT mailed thousands of parcels containing precious metals via First Class mail with Registered Mail services added, and CNT admits that, during the relevant time, it did not declare the actual values of the parcels it mailed, arguing that the declared value for its parcels was "based solely on the level of insurance sought." Compl. ¶ 15. CNT maintains that Postal Service employees said it was not required to declare an actual value, but only a value for insurance. *Id.* at ¶¶ 37-38.

In reviewing CNT's appeal of the revenue deficiency against it, the PCSC considered CNT's claim that it was misinformed by Postal Service employees. However, it is clear that, even if true, "despite any statement by any USPS employee, the burden rests with the mailer to comply with the laws and standards governing domestic mail." DMM 607.1.1. As a result, regardless of any alleged statements by Postal Service employees, CNT was obligated by the regulations to declare the full value, and to pay the correct rate for mailing parcels. Indeed, had the PCSC failed to apply the law, it would have acted *ultra vires*, as the Postal Service cannot grant undue preference to a mailer. *See* 39 U.S.C. § 403(c) ("In providing services and in establishing classifications, rates, and fees under this title, [USPS] shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, *nor shall it grant any undue or unreasonable preferences to any such user*.")(emphasis added).

Because the Postal Service did not act *ultra vires*, this Court cannot consider CNT's claims.

**C.     CNT's Claims Fail Under A Theory Of Equitable Estoppel**

Even if this Court were to consider CNT's equitable claims, they fail as a matter of law. CNT asserts that the PCSC's deficiency against it for its failure to declare the full value for

Registered Mail parcels is inequitable or unfair because postal employees "authorized" CNT to understate the values. As set forth above, even if true, representations by a Postal Service employee does not absolve CNT of its obligation to pay the rate mandated by the regulations, nor does it allow the Postal Service to apply a different rate to CNT. In any case, such a contention falls far short of alleging the required *ultra vires* agency action that would provide this Court with the ability to review the Postal Service's actions and its decision. The PCSC must apply the mail regulations. CNT asks this Court to reverse the PCSC's legally correct application of uniform Postal Service regulations, and to consider its claims based on equity. That request is far beyond the scope of non-statutory review permitted under *Mittleman.* Thus, CNT's claims should be dismissed.

CNT describes itself as a substantial mailer. Compl. ¶ 8. As to its Registered Mail parcels, CNT "regularly shipped its parcels of precious metals with nominal declared values of either $100.00 or $1,000.00 notwithstanding that the actual values were typically higher." *Id.* at ¶ 10. CNT's "packages were worth millions of dollars." *Id.* at ¶ 23. CNT declared a value for its parcels that was not based upon the actual value of its shipments, but instead was "based solely on the level of insurance sought," *Id.* at ¶ 15. CNT alleges that Postal Service employees said CNT was not required to declare an actual value, but only a value for insurance purposes. *Id.* at ¶¶ 37-38. CNT presented registered mail parcels as "sealed mail items to Postal Service employees for mailing." *Compare* Countercl. ¶ 27, with Pl. Ans. ¶ 27. The values declared by CNT were utilized by Postal Service employees to calculate the Registered Mail fees CNT was to pay. *Id.*

In its Complaint, CNT notably fails to cite to the regulations concerning Registered Mail. Instead, CNT refers to an April 20, 2009 e-mail correspondence in which a Postal Service Help Desk employee responds to a person identifying herself as CNT's insurance adjuster inquiring

what federal law governs enforcement of declarations of value, and erroneously states that a mailer is not required by law to list the full value of an item being mailed domestically with Registered Mail (Compl. Ex. F at 35-36). This e-mail correspondence takes place *after* the assessed period of the deficiency. Nonetheless, CNT uses this e-mail as evidence that as a "direct and proximate result" of its reasonable reliance upon Postal Service employees' representations and conduct, it "suffered substantial damages." *Id.* at ¶ 40-41. Despite its lack of merit, while seeking a reversal of the deficiency assessment from this Court, CNT fails to specify how it was damaged.

### 1. Equitable Estoppel And The Government

Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. *Heckler v. Community Health Services,* 467 U.S. 51, 59 (1984). Equitable estoppel in its traditional form does not apply against the federal government. *Frillz, Inc. v. Lader,* 104 F.3d 515, 518 (1st Cir.1997) (citations omitted). *See also United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 761 (1st Cir.1985)(stating that the traditional doctrine of equitable estoppel does not apply fully in cases against the government)(quoting *Akbarin v. INS,* 669 F.2d 839, 842 (1st Cir.1982):

> When then the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.

*Community Health Services,* 467 U.S. 51*,* 60. Later, in *Office of Personnel Management v. Richmond,* 496 U.S. 414 (1990), the Supreme Court concluded:

> In sum, Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed.

*Id.* at 422. As the First Circuit has held, "[i]f estoppel against the government poses any viability...the phenomenon occurs only in the most extreme circumstances." *Dantran, Inc. v. United States Dept. of Labor,* 171 F.3d 58, 66 (1st Cir.1999); *see also Mimiya Hospital, Inc. SNF v. U.S. Dep't of Health and Human Services*, 331 F.3d 178, 183 n. 1 (1st Cir.2003)(highly disfavoring equitable estoppel against the government). This is not such a case.

A party asserting estoppel against the government must first demonstrate the traditional elements of estoppel:

> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act...the first person is not entitled...to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

*Community Health Services,* 467 U.S. at 59.

As the Supreme Court summarized:

> Thus, the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

*Id.* (citations omitted). The burden for bringing an equitable estoppel claim against the government, if it is available, is greater than one brought against a private citizen. *Dantran*, 171 F.3d at 66. If the traditional elements of estoppel are met "[a]t a minimum, the party raising the defense [of estoppel] must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign." *Ven–Fuel,* 758 F.2d at 761; *Frillz*, 104 F.3d 518. Neither carelessness nor a

reluctance to be of assistance are tantamount to affirmative misbehavior. *Ven–Fuel,* 758 F.2d at 761*; See also Dantran,* 171 F.3d at 67.

CNT cannot meet its burden in this case.

### 2. *CNT's Equitable Estoppel Allegations*

In its Complaint, CNT alleges that: (a) Postal Service employees informed it that it was not required to declare the "actual value" for Registered Mail parcels;[9] (b) said CNT was only required to declare the value it sought to be insured; (c) led CNT to believe it was authorized to declare its parcels at nominal values of $100.00 or $1,000.00 because postal workers used CNT's declarations to process its mail at the Registered Mail rate; (d) CNT reasonably relied upon the statements and actions of Postal Service employees; and (e) CNT "suffered substantial damages" as a result.

### 3. *CNT's Reliance On The Alleged Statements And Actions Of Postal Employees Was Not Reasonable*

Reasonable reliance by the party seeking to invoke the estoppel doctrine must be present for a claim of equitable estoppel against the government to succeed. *Community Health Services,* 467 U.S. at 59. Reliance is reasonable only if "the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Id.* Assuming that Postal Service employees informed CNT that it was not required to declare the "actual value" for its Registered Mail parcels, that advice directly conflicted with the clear wording of the published Registered Mail regulations which require CNT to declare the "full value" of its parcels, and that further specify precious metals must be declared at market value or cost. The DMM specifically cautions that despite any statement that might be made by any Postal Service employee, the burden

---

[9] For purposes of this motion only the Postal Service assumes these facts to be true.

rests with the mailer to comply with the laws and standards governing domestic mail. DMM 607.1.1.

A "party cannot justifiably rely for estoppel purposes on a government agent's representation that the law provides to the contrary." *Dantran*, 171 F.3d at 67. The regulations clearly required CNT to declare the market value or cost of its parcels. CNT cannot negate the notice in the regulations by relying upon the alleged directly contradictory statements of employees. *Merrill*, 332 U.S. at 384 ("the United States will not be "estopped by its agents who act … contrary to statute and regulations."). Similarly, the First Circuit has refused to find reasonable reliance when a postal employee gave verbal advice to a customer that was contrary to the regulations. As explained in *A.E. Alie and Sons, Inc., v. U.S. Postal Service*, a case based on a contract claim,

> [a postal customer] wished to mail a number of pieces, whose total value was $60,000, to the same addressee. Alie was not sure whether he could mail them all in one package, insured for that amount, or whether $25,000 was the maximum limit per package, so that there would have to be three. The reason for his doubt was that the registered mail receipt read, "$25,000.00 Domestic Insurance Limit." Alie, accordingly, made inquiry of the postal clerk and was assured that if he declared a larger amount and paid the additional fee shown on the schedule the insurance would apply to the full amount. Alie accepted this representation and proceeded accordingly. The single package was lost.

897 F.2d 591, 593 (1st Cir. 1990). Acting on an equitable estoppel theory, the court found that reliance on the "oral representations of a postal worker that a statement in an official receipt is meaningless[]" was not reasonable as a matter of law. *Id*.

Here, CNT claims that it reasonably relied upon statements of Postal employees to act contrary to clear, published mail regulations to ship thousands of parcels over an extended period of time without paying full postage. Clearly, CNT should have known that any advice it received

to declare a value that was not the actual, market value or cost, was wrong, especially as CNT was obligated to familiarize itself with the applicable regulations. *Community Health* 467 U.S. at 64 (ongoing participant in the Medicare program, "had a duty to familiarize itself with the legal requirements for cost reimbursement" under the program).[10] CNT cannot allege that its reliance on these alleged statements in contravention of the regulations, and which would have rendered the regulations meaningless, is reasonable.

CNT's claim that Postal employees advised that it could state the value of the parcels based upon the desired level of insurance also does not meet the test of reasonableness. First, the regulations specifically require the mailer to declare the "full value" of the articles "regardless of any insurance that may cover the article," and further dictates that precious metals be declared at "market value" or "cost." DMM 503.2.3.1. Second, given the explicit regulatory directive, which CNT was obligated to know, any value declared that is not the "market value" or "cost" is undoubtedly a false statement. In order to accept that CNT reasonably relied upon Postal employees' guidance to declare the value based upon insurance, the Court would have to accept that Postal employees' statements gave CNT license to be untruthful and misrepresent the value of its mailings to the Postal Service. On its face, CNT's contention is unreasonable, and especially so when considering that CNT was a high-volume mailer.

Finally, the fact that Postal workers relied upon the nominal values declared by CNT to calculate the Registered Mail rates it charged CNT does not show that CNT's actions were

---

[10] The DMM is available to all mailers at USPS.com. The current Registered Mail rates are available at https://pe.usps.com/text/dmm300/503.htm#ep1238627 and archived copies are available at https://pe.usps.com/Archive/DMM. Notably, the rates for Registered Mail were included in the DMM for the operative period. *See* Exhibit A, *supra*. CNT had to access the DMM to review the rates, but asks the Court to believe it did not, and was not required to have done so.

authorized, nor does the Postal Service's acceptance of CNT's parcels for mailing reflect evidence of CNT's reliance. As admitted by CNT, CNT provided Postal employees with sealed parcels for mailing, with CNT's declaration of values. Postal workers relied upon the declared values to calculate the Registered Mail rates. This reflects the *Postal Service's* reliance upon CNT's misrepresentations, not the contrary. Further, as set forth above, Postal Service regulations do not allow mailers to rely upon a postal clerk's acceptance of mail to avoid its obligations, and the First Circuit has found such reliance to be unreasonable:[11]

> The USPS is an enterprise with, undoubtedly, thousands of postal clerks. Such low-level employees must be known to have minimum authority. If it could be found reasonable to think they had authority to expose the Service to unlimited obligations, as in this case, it would seem apparent that the Service could face bankruptcy.

*A.E. Alie & Sons, Inc.,* 897 F.2d at 593 (citing *Phelps v. Federal Emergency Management Agency,* 782 F.2d 13, 17 (1st Cir. 1986), quoting *Equitable Estoppel of the Government,* 79 Colum.L.Rev. 551, 565 (1979)). Thus, CNT's estoppel claims based on the acceptance of mail and the alleged statements made by postal employees fails for lack of any reliance, much less reasonable reliance.

4.      *CNT's Evasion Of Rate Payment Cannot Be Considered Cognizable Harm*

CNT seeks to avoid paying postage it was obligated to pay, and its allegations suggest that there was a Registered Mail rate that was based upon optional insurance, in support of its actions.

---

[11] DMM 607.1.2 provides, "a USPS employee's signature on the postage statement and the subsequent acceptance of the mailing do not constitute the verified accuracy of that statement, and do not limit the liability of the USPS to demand proper payment after acceptance when it becomes apparent such payment was not made."

As set forth above, an optional insurance rate does not exist today, and, more importantly, it did not exist during the relevant time period.[12]

The Supreme Court has refused to allow estoppel against the government when the government sought to recover money to which the private party was not entitled. *Community Health Services*, 467 U.S. 51. Here, CNT was required to pay a postage rate to the Postal Service; it should not be allowed to thwart its obligations and the Postal Service's recovery efforts by alleging equitable estoppel for money to which it is not entitled. CNT underpaid postage by claiming "nominal value" for its mail "notwithstanding that the actual values were typically higher," and it did so for thousands of packages over a 15-month period of time. A party asserting an equitable defense "shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).

Accordingly, CNT's equitable claims are not cognizable and should be precluded.

> 5.     *CNT Did Not Rely To Its Detriment, Nor Did It Change Its Position For The Worse*

A party claiming estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse." *Community Health Services*, 467 U.S. at 59 (citations omitted). CNT cannot demonstrate reasonable reliance on any actions or statements attributed to the Postal Service, and cannot prove that it relied upon any claims to its detriment or that it changed its position for the worse. CNT alleges that it has "suffered substantial damages" yet CNT's

---

[12] *See* footnote 4, *supra*.

Complaint fails to reference any detrimental reliance, and nowhere does CNT claim it changed its position for the worse based upon its reliance on any alleged statements or acts at issue.

Notably, during the administrative appeal CNT admitted that, if it had known of the Postal Service's requirements to state full value of the items it was mailing, it would have either purchased insurance through the Service (as CNT's shipping costs are passed on to the customer) or utilized a different carrier for shipping purposes. AR at 41. Indeed, this evidences no detriment at all, as CNT would have had to pay more to the Postal Service or to use another carrier. Even if CNT was not on notice of the regulations, which this Court should not credit, CNT fails to demonstrate the requisite reliance on Postal Service statements causing CNT to change its position for the worse. To the contrary, the Postal Service seeks only to collect the postage due that CNT should have paid.

**C.   CNT's Claim For Unjust Enrichment Interferes With The Rate Structure Created By Congress**

Despite the fact that Registered Mail rates with optional insurance did not exist, CNT alleges that by only declaring the value for its parcels that it wished to be insured for, it effectively paid the appropriate rate. Consequently, CNT argues, it would be damaged if the Court ordered it to pay the rate required for the full value of its parcels. Compl. ¶¶ 53-59. In other words, if this Court allows CNT's claims, and reverses the deficiency, this Court will enforce the rate that CNT itself essentially created by only declaring the values it desired. And, without any basis, CNT asks this Court to assume that it cost the Postal Service less to deliver CNT's parcels at the lower values declared by CNT. *Id.* CNT further concludes, incorrectly, that because insurance coverage was only provided for the nominal rates declared by CNT, allowing the Postal Service to recover would be allowing the Postal Service to recover more than it expended on CNT's parcels – characterizing this as "unjust enrichment" and a "detriment" to CNT. *Id.* Even if valid, however, CNT fails to

establish how such an individualized *post hoc* assessment of the "cost" of delivering these mailings would be relevant or even obtainable.

Postal service regulations do not require that the Postal Service prove its "costs" before it may apply the correct postage rate. *Sears Roebuck & Co., v. U.S. Postal Service*, 134 F.Supp. 3d 365, 382 (D.D.C. 2015) *aff'd in part, vacated in part, rev'd in part sub nom*, *Sears Roebuck & Co., v. U.S. Postal Service*, 844 F.3d. 365, 382 (D.C. Cir. 2016) ("The deficiencies assessed are not for the purpose of ameliorating an injury, but were for the payment of postage due and owing because Plaintiffs had paid for postage at an incorrect rate."). To require postage to be custom tailored and based upon the particularized mailing practices of each mailer would interfere with the rate structure envisioned by Congress and regulated by the Postal Regulatory Commission, creating a "flood of rate litigation." *See id*.

The First Circuit has recognized that impeding the government's authority to enforce valid laws in the context of an equitable estoppel claim would

> insinuate the Judicial Branch into the Executive Branch's exclusive preserve and would carry a serious potential of undermining the Executive Branch's policies and priority setting in enforcing the laws—a result that is no more palatable than frustrating the congressional will.

*Dantran,* 171 F.3d at 67 (referencing *United States v. Marine Shale Processors,* 81 F.3d 1329, 1348-49 (5th Cir.1996) and *FDIC v. Hulsey,* 22 F.3d 1472, 1489 (10th Cir.1994)).

Allowing CNT to avoid payment of the Registered Mail rates that uniformly apply to all mailers violates the rate structure created by Congress, and should not be countenanced by this Court on equitable estoppel grounds.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Count I and III of CNT's Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ Eve A. Piemonte*
Eve A. Piemonte (BBO #628883)
Assistant United States Attorney
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3369
Dated: July 25, 2018    Eve.Piemonte@usdoj.gov

Of Counsel:
SHOSHANA O. EPSTEIN
United States Postal Service
Office of the General Counsel
Appellate and Commercial Litigation
475 L'Enfant Plaza, SW
Washington, DC 20260-0001

## CERTIFICATE OF SERVICE

I, Eve A. Piemonte, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Eve A. Piemonte*
Eve A. Piemonte
Dated: July 25, 2018    Assistant United States Attorney